Marie–Therese H.
**ASSAAD–FALTAS, Plaintiff,**

v.

**Robert GRIFFIN, Defendant.**

**No. LR–C–87–439.**

United States District Court,
E.D. Arkansas, W.D.

March 16, 1989.

Marie–Therese Halim Assaad Faltas, Durham, N.C., pro se.

Richard Pence, Asst. U.S. Atty., Little Rock, Ark., for defendant.

## ORDER

ROY, District Judge.

Before the Court is the defendant's Motion to Dismiss Plaintiff's Complaint. All of the other defendants that were originally named in the pleadings have been dismissed by separate order. The Court construes this motion as one under Fed.R. Civ.P. 12(b)(6) for failure to state a claim under which relief can be granted, and since affidavits are being considered by the Court, the motion will be treated as one for summary judgment. Fed.R.Civ.P. 12(b)(6).

In the plaintiff's complaint, the only allegation relevant to defendant Griffin is contained in paragraph 8 under Count IV. In that paragraph, the plaintiff contends:

In February 1987 and with malicious intent to subject plaintiff to prosecution and interfere with her career and livelihood, defendant Griffin published about her defamatory statements that are false to or outside his knowledge that she habitually removes federal property without permission.

Defendant Robert Griffin is employed by the Veterans Administration, and holds the position of Supervisor, Histopathology section, Laboratory Service. As such, according to his affidavit which was attached to his Motion to Dismiss, he is responsible for the daily function of the Histopathology section and for all property and supplies. In his affidavit, Mr. Griffin sets out the facts which resulted in his investigation of missing scrub suits from the VA Hospital. These facts are set out as follows:

On Thursday, February 12, 1987, at approximately 9:00 a.m. Dr. Marie Assaad asked one of my technicians, Mr. Kevin Junkin, if he would open up the dressing room so that she could get some of our scrubs. It was after this that I noticed on her desk that she had a large stack of our disposable scrubs that we use to perform autopsies. In questioning some of the other technicians, I found that she had been taking these scrubs from time to time, and the technicians were not aware of where they were being removed. I thought at this time they were being taken to the UAMS to be used for the performance of autopsies at that facility. I, therefore, called Mr. Terry Barnett, who is Supervisor, Autopsy Service, UAMS, and questioned him about this. He told me that he was not sure whether or not she was wearing them, but he did tell me that that morning she had an autopsy at the UAMS. When she came in, she told Mr. Barnett that she was coming to the VAMC to get some of our scrubs to wear when she performed autopsies. I then checked to see how many scrubs were on her desk. She had 11 pair of pants and 6 tops with about 5 pair of our surgical gloves. I talked to Dr. Muhammad Husain, Chief, Autopsy Section, Laboratory Service, John L. McClellan Memorial Veterans Hospital, about this. He informed me that we should put these back in stock and talk with Dr. Assaad about this. Dr. Assaad came to me and asked me what I had done with the scrubs. I told her I had put them back in our stock, and if she had any problems with this she should see Dr. Ernest Walker, Assistant

Chief, Laboratory Service and talk with him about it.

On Wednesday, February 18, 1987, Mr. Barnett from the UAMS, called me and told me that he had indeed found some of our scrub suits. He described them to me, and they indeed did sound like our scrub suits. I asked him if there was any place at the UAMS that she could have gotten these scrub suits other than the VAMC and he said he did not know of any place. I determined then that those must indeed be our scrub suits that had been taken to the UAMS.

Sometime during the week of February 16 through February 20, 1987, Dr. Linda Perrot, Consultant Pathologist at John L. McClellan Memorial Veterans Hospital and Arkansas Childrens' Hospital, advised me that Dr. Assaad had disposable scrubs that were the property of John L. McClellan Memorial Veterans Administration Medical Center at Arkansas Childrens' Hospital. She wore them when performing autopsies at Arkansas Childrens' Hospital when on rotation there. I advised Dr. Walker of this and he immediately contacted Security Service. On February 23, 1987, Dr. Walker, Mr. Hershel D. Raney, and myself went to the Autopsy Room, Arkansas Childrens' Hospital, where we met with Dr. Perrot. Dr. Perrot gave us 9 tops and 9 bottoms of soft scrub disposable medical suits issued by VAMC for use during autopsy. Dr. Perrot stated that Dr. Marie Assaad–Faltas had performed an autopsy on December 28, 1986, and that she brought the suits from the VA to use. The reason is she did not like to use the Childrens' Hospital used wash and wear suits and Dr. Assaad–Faltas said they would still have germs on them. The VA suits were taken by myself and returned to stock at the VAMC.

Griffin's affidavit.

In her response to the Motion to Dismiss, plaintiff states that Mr. Griffin's brief "presumes this Court and the plaintiff to be concluded by *his* affidavits that he acted within the outer perimeter of his duty; ... Furthermore, a *ruling of law* as to whether Mr. Griffin acted within the outer perimeter of his duties *vel non* must await a *determination of fact* of where that perimeter is and consequently, the completion of discovery. The attached affidavit, nonetheless, rebuts defendant's." The attached affidavit of the plaintiff's states:

I have subpoenaed, received and read defendant Griffin's official job description.

His actions as described in his affidavit that his attorney served on me on September 8, 1987, and that I received four days later, fall outside the outer perimeter of his duties physically and figuratively.

The plaintiff has failed to give the Court any specific reason or evidence as to how Mr. Griffin's actions were outside the scope of his duties. Plaintiff failed to produce Mr. Griffin's job description to rebut Griffin's affidavit. In fact, an affidavit was submitted by Mr. Vincent J. Parrish, Director of the John L. McClellan Memorial Veterans Hospital, wherein Mr. Parrish stated that "all actions taken by Robert Griffin on the dates referred to in the above-referenced complaint were made in the scope of his employment as Supervisor, Histopathology Section, Laboratory Service, at the John L. McClellan Memorial Veterans Hospital, Little Rock, Arkansas." In addition, the very nature of Mr. Griffin's title, Supervisor, Histopathology section, Laboratory Service, indicates that Mr. Griffin would be responsible for supplies and property in the section and that missing scrub suits would be within the realm of his position.

Furthermore, plaintiff does not deny taking the scrub suits. Instead, she said she merely "transferred" them. In plaintiff's Counter–Statement of Material Facts filed in response to the other defendants' Motion for Summary Judgment and Statement of Material Facts, plaintiff asserts:

69. Paper suits and other minor material are placed at the VA for use by residents at their discretion. For residency purposes, UAMS, ACH and VA function as a unit. UAMS and ACH are partially federally supported. Plaintiff did not remove anything that belongs to the VA;

she merely transferred material among three subunits of one functional entity as she was given, at least, implicit permission and duty to do.

70. The washing process does not destroy hardy viruses like those causing hepatitis or Jacob–Kreuzfeld disease. The washable suits are uncomfortable for a person of plaintiff's build and offensive to her modesty. They offer no protection and, worse, may act as a wick that conducts blood from cadavers to prosectors' skin. It is impossible to rip them off fast enough when soiled. Disposable suits do not provide adequate protection but, when properly used, provide better protection.

71. On or about Feb. *10*, 1987, plaintiff expressed to Dr. Walker her dissatisfaction with defendant Griffin's interference with her work.

As stated by the defendant, federal employees have absolute immunity from common law tort claims for actions taken within the outer perimeter of their line of duty. *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Poolman v. Nelson*, 802 F.2d 304, 307 (8th Cir.1986); *Bushman v. Seiler*, 755 F.2d 653, 655–656 (8th Cir. 1985); *Wallen v. Domm*, 700 F.2d 124, 125 (4th Cir.1983). In order for the conduct of the federal employee to come within the outer perimeter of his line of duty, "[T]he act must have more or less connection with the general matters committed by law to the officer's control or supervision, and not be manifestly or palpably beyond his authority." *Poolman v. Nelson, supra,* at 308–309, quoting from *Gross v. Sederstrom*, 429 F.2d 96, 100 (8th Cir.1970).

The Court is also aware of the recent Supreme Court case of *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), which also requires a finding that the challenged conduct is discretionary in nature. A review of the affidavits clearly indicates that the conduct in question was an appropriate exercise of discretion which a person in defendant's position must possess if the Veterans' Hospital is to function effectively. Thus, both tests set out in *Westfall* have been satisfied.

Based upon the foregoing, the Court finds that at all times pertinent to the plaintiff's allegations, the defendant Robert Griffin was acting within the scope of his official duties and responsibilities. Furthermore, the conduct was of a discretionary nature. Consequently, the plaintiff's claim against the defendant Robert Griffin, VA employee, for libel and slander is barred by immunity. The complaint must therefore be dismissed.

ORDERED.