Walter G. PETROUSKY, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 88–CV–755.

United States District Court,
N.D. New York.

Jan. 16, 1990.

Walter G. Petrousky, Theresa, N.Y., pro
se.

Frederick J. Scullin, Jr., U.S. Atty., William F. Larkin, Asst. U.S. Atty., N.D.N.Y.,
Syracuse, N.Y., for defendant.

## MEMORANDUM–DECISION
## AND ORDER

MUNSON, District Judge.

The present action sounds in libel. Plaintiff worked for the United States Army as a civilian management analyst at Fort Drum. He brought an action in small claims court alleging that his supervisor,

Martha S. Needling, had libelled him in five memoranda. For damages he sought $2,000. Subsequent to the institution of the lawsuit, the action was removed to this court and the United States was substituted as the defendant in lieu of plaintiff's supervisor. In support of the motion to substitute the United States, Assistant United States Attorney William F. Larkin certified that "the individual defendant was acting within the scope of her employment" at the time of the actions complained of. Docket Document ("Doc.") No. 6; see 28 U.S.C. § 2679(d)(2); 28 C.F.R. § 15.3.

In a Memorandum–Decision and Order signed May 12, 1989 this court held that there was a disputed issue of fact as to whether Needling had acted within the scope of her employment when she performed the acts complained of. The court directed the parties to appear for a hearing on the matter or, in the alternative, offered the government an opportunity to demonstrate as a matter of law that Needling was acting within the scope of her employment. The government chose the latter alternative and its motion is presently before the court. In essence, the motion is a motion for reconsideration of the Memorandum–Decision and Order signed May 12, 1989. The court, as evidenced by its previous decision, will entertain the motion. In addition to the government's motion, plaintiff's motion for summary judgment is also pending before the court.

A. *Deference to the Certification.*

■ In its present motion the government's primary argument, up until recently, rested upon the assertion that the court is precluded from reviewing the Assistant U.S. Attorney's scope of employment certification. However, in open court Assistant U.S. Attorney William F. Larkin stated that the government is now withdrawing that line of argument in view of new Justice Department guidelines. According to Assistant U.S. Attorney Larkin, the new guidelines provide that the government will no longer take a position that the court is precluded from reviewing the scope of employment certification.[1] Instead, the govern-

ment now contends that the certification, albeit reviewable, is entitled to deference from this court.

Although an agency's interpretation of a statutory scheme under which it works is usually entitled to deference, see, e.g., *Weeks v. Quinlan,* 838 F.2d 41, 43 (2d Cir.1988); *Sunshine Health Systems, Inc. v. Bowen,* 809 F.2d 1390 (9th Cir.1987), the court is of the opinion that deference is not proper with respect to certification under § 2679. This decision primarily stems from the court's conclusion that the system of certification by the United States Attorney is constitutionally suspect. In addition, the court determines that deference was not required under the previous certification system which involved the antecedent to the present § 2679. Before addressing the constitutional issues, the court will review the history of § 2679.

The certification in the present action was required by the relatively new Federal Employees Liability Reform and Tort Compensation Act, P.L. 100–694, 102 Stat. 4563 (November 18, 1988 ("Reform Act" or "Act"). The Reform Act made the § 2679 certification process applicable to all actions brought against a federal employee under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and §§ 2671–2680. Previously, that certification process in § 2679 was part of the Drivers Liability Act which applied only to torts involving motor vehicles operated by federal employees. See L. Jayson, *Handling Federal Tort Claims: Administrative and Judicial Remedies* § 175.03[2], at 6–19 (1989) ("Jayson").

Under the Drivers' Act version of § 2679 ("old § 2679"), the trial judge determined the scope of employment issue as a matter of law. *Levin v. Taylor,* 464 F.2d 770, 771 (D.C.Cir.1972). In fact, the government's position that certification under § 2679 used to be entitled to review by this court under an "arbitrary and capricious" standard, *see Proietti v. Levi,* 530 F.2d 836 (9th Cir.1976), has been implicitly, yet emphatically, rejected by this court in *Van Lieu v. United States,* 542 F.Supp. 862 (N.D.N.Y. 1982). In *Van Lieu,* despite a government

---

1. The court was not provided with these new guidelines.

certification of scope of employment, the court made its own independent determination of scope of employment following a hearing. This approach is supported by the rule in the Second Circuit that under the old § 2679 a case which commenced in state court was to be remanded in the event a federal court determined that the employee was not acting within the scope of her employment. *See Kelley v. United States*, 568 F.2d 259, 268 (2d Cir.) (a removed case was to continue to judgment unless it was *found* on a pretrial motion that the employee was acting beyond the scope of his employment), *cert. denied*, 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978). It has been noted that "much of the extensive body of case law construing and applying the Drivers Act is directly relevant to the interpretation and application of the new amendments." Jayson § 175.03[1], at 6–19. Under that theory, the old case law, including the *Kelley*, *Levin* and *Van Lieu* cases, would apply to the Reform Act and review of the certification would be de novo.

Presumably, the government could argue that the new § 2679 amends the old § 2679, by directing that the certification is entitled to deference from the courts. While there is no such express statement in the legislation, the statutory scheme is suggestive of such deference. Under the Reform Act only the federal employee has the right to petition the court for a certification that she *was* acting within the scope of her employment. That Act provides no corresponding mechanism by which a plaintiff may petition the court for a determination that the employee *was not* acting within the scope of her employment. Nevertheless, there is an element of the legislative history that suggests that the court may make its own determination on the scope of employment issue. The House Report on the Reform Act exhibited no antagonism towards court determination of scope of employment issues. In fact, while it castigated the Supreme Court's decision in

*Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), which stiffened the requirements for qualifying for absolute immunity, the Report generally applauded the scope of employment determinations made by courts when examining issues of scope of employment. H.R.Rep. No. 100–700, 100th Cong., 2d Sess., at 2–3, *reprinted* in 1988 U.S.Code Cong. & Admin.News 5945, 5946.

Moreover, the court cannot help but wonder if the government threw out the bath water with the baby when it agreed that the certification was reviewable. Absent constitutional concerns, the government had a strong argument based on Congressional intent that this court is precluded from reviewing the certification. *See supra* at 5; *Aviles v. Lutz*, 887 F.2d 1046, 1048–50 (10th Cir.1989); *S.J. and W. Ranch, Inc. v. Lehtinen*, 717 F.Supp. 824 (S.D.Fla.1989); *Assaad–Faltas v. Griffin*, 715 F.Supp. 247, *amending*, 708 F.Supp. 1035 (E.D.Ark.1989); *Arbour v. Jenkins*, 713 F.Supp. 229 (E.D.Mich.1989); *cf. Martin v. Merriday*, 706 F.Supp. 42 (N.D.Ga. 1989). Without notification of the reasons for the government's about-face, the court ponders whether the Justice Department has located some constitutional imperfection with unreviewable certifications. Such imperfection, depending on its character, could well carry over to any contention that the certification is entitled to deference.

This court's constitutional concerns both relate to the guarantee of due process under the law. *See* U.S. Const. amend. V. For there to be a due process violation: plaintiff must have a property right; there must be government action amounting to a deprivation; and it must be demonstrated that the deprivation occurred without due process. *Rosa R. v. Connelly*, 889 F.2d 435, 438 (2d Cir.1989). The court holds that plaintiff has a constitutionally recognized property interest in the present lawsuit and/or the damages he seeks in this suit.[2] *Martin v. Zook*, No. 87–3775, 1988

---

**2.** The court acknowledges that "not every cause of action possibly recognized by the state courts creates a constitutionally protected interest." *McElearney v. University of Illinois at Chicago Circle Campus*, 612 F.2d 285, 288 (7th Cir.1979)

(citing *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)). However, this court holds that plaintiff has a constitutionally protected interest, not in his cause of ac-

WL 33919, 1988 U.S.Dist. LEXIS 3016 (E.D.Pa. December 31, 1988); *Windsor Communications Group, Inc. v. Grant,* 75 B.R. 713, 734 (E.D.Pa.1985) ("Obviously, a money judgment against a person, such as those sought in the instant five (5) actions, implicates a due process property interest."); *see Sun Oil Co. v. Wortman,* 486 U.S. 717, 108 S.Ct. 2117, 2125–26, 100 L.Ed.2d 743 (1988);[3] *Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1027 (5th Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983); *cf. Federal Deposit Ins. Co. v. Morrison,* 747 F.2d 610, 614 (11th Cir.1984) ("Even an arguable right of possession constitutes property.") (citing *Fuentes v. Shevin,* 407 U.S. 67, 86–87 & n. 16, 92 S.Ct. 1983, 1997 & n. 16, 32 L.Ed.2d 556 (1971)), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985); *Brinkerhoff–Faris Trust & Savings Co. v. Hill,* 281 U.S. 673, 682, 50 S.Ct. 451, 454, 74 L.Ed. 1107 (1930) ("while it is for the state courts to determine the adjective as well as the substantive law of the State, they must, in so doing, accord the parties due process of law") (Brandeis, J.). To hold otherwise would be to determine that a litigant is not entitled to due process from the nation's courts, either state or federal. With respect to the second requirement, the court concludes that the government action which amounts to a deprivation is the certification performed by the Assistant United States Attorney. If given deference, it effectively terminates plaintiff's lawsuit, even though the Order of this court is the instrument which would actually terminate the litigation.

The court next addresses two procedural concerns. First, and most importantly, unless this court can decide the scope of employment issue, the statute provides no opportunity to be heard to a plaintiff upon whose action certification and removal are contemplated. In brief, the statutory

scheme is constitutionally suspect because the guarantees of due process require that plaintiff have an opportunity to be heard. *Londoner v. Denver,* 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908); *Neighborhood Toxic Cleanup Emergency v. Reilly,* 716 F.Supp. 828, 833–37 (D.N.J.1989). The extent to which he is entitled to be heard depends on whether the administrator is determining adjudicative facts or legislative facts. "Adjudicative facts are facts about the parties and their activities, businesses, and properties." K. Davis, *Administrative Law Treatise* § 7.02 (1958). "Legislative facts ... are general facts which help [a] tribunal decide questions of law and policy and discretion." *Id.* There can be little doubt that the certification process determines adjudicative facts, facts particular to plaintiff, his supervisor and their individual circumstances. Therefore, it is especially warranted that plaintiff be given an opportunity to be heard prior to the decision to certify. *Londoner v. Denver,* 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908); *United States v. Florida East Coast Ry. Co.,* 410 U.S. 224, 244–46, 93 S.Ct. 810, 820–21, 35 L.Ed.2d 223 (1973); *see also Bi–Metallic Investment Co. v. State Bd. of Equalization,* 239 U.S. 441, 446, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915).

It could be argued, with near effectiveness, that plaintiff has an opportunity to be heard when he files his complaint. However, the complaint may or may not address the scope of employment issue. If it does not, there may be a good reason for the absence of any such discussion. For instance, in *Van Lieu* this court was presented with a situation in which "plaintiff was entirely unaware that [defendant] had any connection with the military." 542 F.Supp. at 863. The present action is equally illustrative. It was filed in small claims court on July 27, 1988; the sum-

---

tion, but either in his lawsuit, or the damages he seeks thereunder, or both.

**3.** In *Wortman,* the Court reviewed a case in which owners of mineral leaseholds sought interest payments on late royalty payments from Sun Oil Co. In affirming the Kansas Supreme Court's decision, the court held that Kansas courts' application of its own statute of limita-

tions did not violate the due process clause of the fourteenth amendment. 108 S.Ct. at 2125–26. Implicit in the Court's due process analysis is a holding that a property interest was at stake. That property interest must have been found in the action brought by, and/or damages sought by, the leaseholders.

mons issued by that court was not at all explicit. It did not identify the nature of the case beyond stating, "Libel per se—injured personal and professional reputation and loss of wages." The government removed the action to this court on July 8, 1988. In a motion, defendant *later* sought a more definite statement. Doc. 2. However, the papers submitted in conjunction with that motion neither mentioned the scope of employment issue nor the possibility of upcoming certification. Nor did they put plaintiff on notice of the possible effect of a scope of employment determination. Accordingly, the court is hesitant to defer to a decision prior to which plaintiff had no opportunity to be heard by the decisionmaker. *Compare Reilly*, 716 F.Supp. at 835 (noting that plaintiff raised a powerful due process argument that it was entitled to judicial review of remedial plan prior to enactment of the plan; holding, however, that plaintiff did have an opportunity to be heard).

In addition to the issue regarding opportunity to be heard is the issue of potential bias of the certifier. In an action against a federal employee for libel, slander or defamation, etc., an Assistant U.S. Attorney who is defending such a case may, under the government's theory of deference, almost certainly assure the demise of the action he defends when certifying that the actions complained of are ones which a federal employee undertook within the scope of her employment. Under the Reform Act and the FTCA, once the United States has been substituted as the defendant in an action alleging libel, slander or defamation, the action must be dismissed because the United States may not be sued for libel, slander or defamation. 28 U.S.C. § 2680(h).

The court is cognizant that any contention that the combination of investigative and adjudicative functions creates bias must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 46,

95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). The court is of the opinion that the language in *Withrow* just cited is inapplicable to the instant matter. Further, this court concludes that the statutory scheme set up in the Reform Act substantially promotes the potential for bias. In fact, the potential for bias reaches the degree in which the presumption of honesty and integrity is overcome in favor of a finding of prejudgment.[4]

In *Withrow*, the Court addressed a situation in which a medical doctor sought to enjoin a state medical examining board from suspending his license. The doctor argued that it was a violation of due process for the board to both investigate and adjudicate the claims that he had acted improperly. The Supreme Court held that there was no violation of due process. There was no indication that the board had prejudged the case or that it approached the case in a biased manner. Furthermore, the Court held that a mere joinder of investigative and adjudicatory tasks does not violate the due process class.

Nonetheless, subsequent to *Withrow* it has been held that "Anglo–American law does not permit anyone to be the judge of his own case." *Utica Packing Co. v. Block*, 781 F.2d 71, 77 (6th Cir.1986). Thus, the court in *Utica Packing* held that there was a denial of due process when the associate of the prosecutor of a case became the legal advisor to judicial officer deciding the case. This court has identified a crucial distinction which renders intelligible the differing results in *Withrow* and *Utica Packing*. In *Withrow* the Court refused to hold unconstitutional the combination of investigative and adjudicative roles. In *Utica Packing* the court found impermissible a situation in which one individual worked with an individual who performed an *advocacy* role in a case and later took on an adjudicative role in the same case. *See Withrow*, 421 U.S. at 50–51 n. 16, 95 S.Ct. at 1466 n. 16 (citing with approval

---

**4.** The court has the utmost respect for the Assistant United States Attorney who is defending this case. The court has no information before it which would suggest that the certification in this case was ill-advised or improperly motivated. As discussed later in this Memorandum–Decision, the court fully concurs with the certification decision. *See infra* at 896–898.

cases which held that it was impermissible to perform both an advocacy and adjudicative role). Apparently, in *Utica Packing* the court identified a substantial risk that the legal advisor had prejudged the case and that his bias would carry over to the judicial officer deciding the case.

Under the statutory scheme of the Reform Act and the regulations promulgated thereunder, there is the possibility of an individual being both judge and defense attorney. In other words, under the Reform Act and its present administrative interpretation, there is an impermissible joinder of the adjudicative and advocacy roles. However, as the comparison of *Withrow* and *Utica Packing* illustrates, the due process clause requires more protection, for "[w]ith regard to judicial decisionmaking, whether by court or agency, the appearance of bias or pressure may be no less objectionable than reality." *D.C. Federation of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1246–47 (D.C.Cir.1971), *cert. denied*, 405 U.S. 1030, 92 S.Ct. 1290, 31 L.Ed.2d 489 (1972).

Presumably, one could argue that a United States Attorney frequently combines ad-

judicative and advocacy roles and that the present certification scheme is, therefore, permissible. The present situation is distinguishable from the role frequently undertaken by the United States Attorney. Certification in the instant case does not reflect a situation in which the United States Attorney or his Assistant is deciding whether to prosecute a case.[5] To the contrary, an Assistant United States Attorney in a libel action can *dismiss a case for which he is the defense attorney* through making a determination of fact, namely, finding that a federal employee was acting within the scope of her employment. Thus, the scheme set up under the Reform Act is comparable to the situation rejected in the *Utica Packing* case, namely, one individual is in the position of deciding a case in favor of the side which he represents or recently represented. This sets the scene for an impermissible appearance of bias.

To avoid constitutional deficiencies, the court determines that the scope of employment certification is not entitled to deference. Accordingly, the court considers the issue *de novo*.[6]

---

5. "[T]he combination in administrative procedures of judging with prosecuting is not, *per se*, a denial of due process." *New York State Inspection, Security and Law Enforcement Employees v. The New York State Public Employment Relations Bd.*, 629 F.Supp. 33, 46 n. 14 (N.D.N.Y.1984) (quoting *Jonal Corp. v. District of Columbia*, 533 F.2d 1192, 1196 (D.C.Cir. 1976)); *see Marcello v. Bonds*, 349 U.S. 302, 311, 75 S.Ct. 757, 762, 99 L.Ed. 1107 (1955).

6. Generally, the strictures of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, apply only if another statute requires their utilization. *See United States v. Allegheny–Ludlum Steel*, 406 U.S. 742, 756–57, 92 S.Ct. 1941, 1950–51, 32 L.Ed.2d 453 (1972); *United States v. Independent Bulk Transport, Inc.*, 480 F.Supp. 474, 477 (S.D.N.Y.1979). Since Congress did not provide for a hearing of any variety during the certification process, it is fair to say that Congress did not intend the procedural requirements of the APA to apply to that process. Accordingly, the court has not discussed the requirements of the APA, but instead proceeded to constitutional issues.

Even if the Constitution, and not Congress, requires a hearing, the strictures of the APA may still apply. Thus, in *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950), the Supreme Court held that the proce-

dures of the APA can be read into an act to save it from invalidity. *Id.* at 50, 70 S.Ct. at 454. However, when the Constitution mandates certain procedures which the statute does not contain, the procedures of the APA are not always triggered. Even with agency adjudications, constitutional deficiencies will not trigger application of the APA when the procedures in place already comply with due process requirements, *Independent Bulk Transport*, 480 F.Supp. at 478, 482, or when practical considerations weigh in favor of not invoking the APA. *Clardy v. Levi*, 545 F.2d 1241 (5th Cir.1976) (declining to apply the APA to Bureau of Prisons' disciplinary hearings).

In the case at bar, the court has the choice of saving the statute by conducting *de novo* review of the scope of employment issue or by holding that the APA applies and remanding the certification question to the United States Attorney. The court believes that *de novo* review is more appropriate. First, there are reasons specific to the case at bar. The parties have both briefed the scope of employment issue, and *de novo* review in the instant matter, accordingly, will be less burdensome to the government. In addition, the government has not contended that APA procedures are preferable to *de novo* review. Second, there are more general reasons. The rule in this circuit under the old § 2679 called for *de novo* review. *See supra* at 891. Further, invok-

### B. *Jurisdiction.*

■ Prior to addressing the scope of employment issue, some background is appropriate. Facing the court now, as before, are two jurisdictional issues. For the court to have jurisdiction over plaintiff's action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and §§ 2671–2680, plaintiff must first have filed an administrative claim. *See* 28 U.S.C. § 2675(a); *Adams By Adams v. United States Dept. of Housing and Urban Development*, 807 F.2d 318, 321 (2d Cir.1986). In addition, Needling's actions must have occurred within the scope of her employment. 28 U.S.C. § 1346. In its previous decision on the question, the court chose to focus on the latter requirement. That choice evolved from the apparently different results which would follow a determination of lack of subject matter jurisdiction based on the first requirement or the second. If the court based its holding on the failure to file an administrative claim, the action would be dismissed and the plaintiff would have an opportunity to present his claim to the appropriate federal agency. 28 U.S.C. § 2679(d)(5). However, if the acts complained of were not conducted within the scope of employment, then it appeared that the appropriate course would be to remand the matter back to small claims court, for, after a case is removed, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447.

Even if the court were to find that Needling was not acting within the scope of her employment when she performed the conduct complained of, the government argues that jurisdiction would still be proper under 28 U.S.C. § 1442. The court disagrees. Under a recent Supreme Court pronouncement, in order to invoke the court's jurisdiction under § 1442, the defendant must raise a colorable federal defense. *Mesa v. California*, —— U.S. ——, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). In the present action, the government contends that Needling could raise the defense of absolute immunity. However, under the case of *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), Needling may only claim absolute immunity when her conduct is within the scope of her employment *and* discretionary in nature. *Id.* 108 S.Ct. at 584; *see* H.R.Rep. No. 100–700, 100th Cong., 2d Sess. at 2, *reprinted in* 1988 U.S.Code Cong. & Admin.News 5945, 5946 (To prevail after *Westfall* on a defense of absolute immunity "the Federal employee not only must have been acting within the scope of employment ... but also must have exercised governmental discretion in acting."). Therefore, if the court were to find that Needling had not performed the acts complained of in the scope of her employment, she would not be entitled to absolute immunity. Since that is the only federal defense forwarded, the court concludes that a determination that Needling was not acting within the scope of employment would bar jurisdiction under both §§ 1346 and 1442.

### C. *Scope of Employment.*

■ Consequently, the court moves on to consider whether Needling acted within the scope of her employment when she performed the acts complained of. As the government notes, this question is resolved through application of state law. *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); *Cronin v. The Hertz Corp.*, 818 F.2d 1064, 1065 (2d Cir.1987); *Avery v. United States*, 434 F.Supp. 937, 942 n. 6 (D.Conn.1977).

The fact that the tort alleged in the instant action is intentional does not remove the possibility that it was committed within the scope of employment. *Quadrozzi v. Norcem, Inc.*, 125 A.D.2d 559, 561, 509 N.Y.S.2d 835, 836 (2d Dept.1986); *Birnbaum v. United States*, 436 F.Supp. 967 (E.D.N.Y.1977), *aff'd*, 588 F.2d 319 (2d Cir. 1978). In part, this represents a broadening of the definition of scope of employment which has evolved in the twentieth century. As explained by the New York

ing the APA may subject the government to more procedural requirements than are required by the

fourteenth amendment.

State Court of Appeals, "social policy has wrought a measure of relaxation of the traditional confines of the doctrine." *Riviello v. Waldron*, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 302, 391 N.E.2d 1278, 1281 (1979) (citing Restatement (Second) of Agency § 219, comment a); *see* 52 N.Y. Jur.2d *Employment Relations* § 353, at 470–71. To resolve the scope of employment issue the court must examine "whether the act was done while the servant was doing his master's work, no matter how irregularly, or, with what disregard of instructions." *Id.* Nonetheless, "torts committed for personal motives unrelated to the furtherance of the employer's business" do not fall within the ambit of *respondeat superior* (scope of employment). *Murray v. Watervliet City School Dist.*, 130 A.D.2d 830, 833, 515 N.Y.S.2d 150, 152 (3d Dept.1987); *see Avery*, 434 F.Supp. at 942–43 (applying New York law).

In its review of the scope of employment issue the court will consider five factors:

> (1) the connection between the time, place and occasion for the act; (2) the history of the relationship between employer and employee as spelled out in actual practice; (3) whether the act is one commonly done by such an employee; (4) the extent of departure from normal methods of performance; and (5) whether the specific act was one that the employer could reasonably have anticipated.

*Essig v. United States*, 675 F.Supp. 84, 86 (E.D.N.Y.1987) (quoting *Riviello*, 47 N.Y.2d at 308, 418 N.Y.S.2d at 303, 391 N.E.2d at 1282).

As should be obvious, determination of the scope of employment issue "depends largely on the facts and circumstances peculiar to each case." *Riviello*, 47 N.Y.2d at 302, 418 N.Y.S.2d at 302, 391 N.E.2d at 1281. In examining these facts the court is mindful that the government has presented a motion seeking summary judgment in its favor. However, at present the court is addressing its jurisdiction, a matter to which the summary judgment process is not applicable. J. Moore, 6 *Moore's Federal Practice* ¶ 56.03, at 56–56 (1988). Jurisdiction is, instead, properly the subject of a

motion to dismiss. *Id.* Nonetheless, the court will approach the issue as if it were an issue to be resolved by summary judgment in that the court will review the evidence submitted seeking to determine whether there is an absence of a genuine issue of fact. If the court does encounter a genuine issue of fact, it has "broad discretion as to the method to be used in resolving the factual dispute." *Id.* at 56–60.

At issue in the present lawsuit are five memoranda written by Needling to and/or regarding plaintiff. There are three counseling memoranda, a memorandum for the record and a memorandum serving as a notice of proposed suspension. The first of these documents was dated January 25, 1988 and the last was dated May 9, 1988. These memoranda contain Needling's admonishments concerning plaintiff's disrespectful attitude, unexcused absences, going outside the chain of command, his allegations of fraud at the workplace and arguments with Needling. Viewed most favorably to plaintiff these documents represent one side of a personality conflict.

Upon consideration of the five factors listed above, the court observes that it only has sufficient evidence to resolve the first and the fifth. With respect to the other three factors, first, there is no direct evidence before the court regarding the actual practice of Needling and her employer, the United States Army. Nor is there direct evidence whether these memoranda or similar ones were "commonly done" by Needling. Finally, there is no direct evidence regarding departure or lack of departure from normal methods of performance.

There is, however, indirect evidence submitted on these middle three factors, namely, Needling's job description. It provided, in part, that she was to perform supervisory management functions: determining acceptable levels of performance, developing performance standards, evaluating performance and administering employee discipline programs. *See* Defendant's Exhibit 11, Doc. 19. Thus, even though the court cannot determine Needling's actual practice, what she commonly did, or whether there were departures from normal meth-

ods of performance, it appears—without contradiction from plaintiff—that Needling was expected to discipline her subordinates. A natural manner to do this would be through the use of memoranda, some of which, in the instance at bar, followed oral counseling sessions.

Even without direct evidence on the middle three factors, the court is able to resolve the scope of employment issue. With respect to the first factor, there is no doubt but that the five memoranda were composed and issued at the workplace and during working hours. More importantly, though, it has been observed that the New York courts place greater emphasis on the fifth factor of foreseeability. *Essig*, 675 F.Supp. at 87. To this end this court holds that it was foreseeable that Needling would issue the memoranda for which plaintiff seeks redress. That is, "general foreseeability exist[ed]" that Needling in her supervisory capacity would write memoranda regarding unexcused absences, and perceived insubordination, etc. *Cf. Murray*, 130 A.D.2d at 834, 515 N.Y.S.2d at 153 (generally foreseeable that a teacher, in front of other students, would tell plaintiff's daughter that plaintiff had become pregnant during plaintiff's secondary schooling). Even if the memoranda stemmed from a personality conflict, it would be foreseeable that a supervisor would at times have a personality conflict with a subordinate and that the personality conflict would be reflected in counseling memoranda.

Analysis of the scope of employment issue is appreciably clearer under the Restatement (Second) of Agency. Although it is not absolutely clear that New York follows the Restatement (Second), in *Riviello* the New York Court of Appeals cited it with approval. In fact, one federal district court in New York has opined that New York follows the Restatement (Second) of Agency. *See Vargas v. Correa*, 416 F.Supp. 266, 271 (S.D.N.Y.1976) (cited with approval in *Stavitz v. City of New York*, 98 A.D.2d 529, 532, 471 N.Y.S.2d 272, 274 (1st Dept.1984)). In applying the Restatement (Second) to a scope of employment issue this court takes its cue from *Cronin v. The*

*Hertz Corp.*, 818 F.2d 1064 (2d Cir.1987) (applying Connecticut law). The *Cronin* court distilled into two factors the scope of employment test set forth in the Restatement (Second). The second factor is foreseeability, which this court has already determined favors a finding that Needling acted within the scope of her employment. The first factor is whether the employee's conduct was "actuated, at least in part, by a purpose to serve the master." *Id.* at 1067 (quoting Restatement (Second) of Agency § 228(1)(c)). This too must be resolved in favor of a finding that Needling acted within the scope of her employment. The issues dealt with in the five memoranda all relate to personnel issues, even if sometimes in a tangential fashion. While plaintiff does dispute Needling's motivations, he does not, except in conclusory fashion, contest the individual allegations in the memoranda. For instance, he does not dispute that he took unexcused absences, that he went outside the chain of command, or that he referred to his superior in a manner she termed disrespectful. Thus, even if personal animus motivated Needling to put in the effort to compose the five memoranda, the only reasonable inferences to be drawn are that, given the charge in her job description, Needling was at least partially motivated by a purpose to serve her employer.

As a result, the court holds that the actions complained of were conducted within the scope of employment. It follows that remand would not be proper. However, dismissal on the merits is likewise improper because the second jurisdictional flaw is still present. In this regard, both parties agree that plaintiff has not submitted his claim of libel to the appropriate federal agency prior to filing his complaint in small claims court. This omission deprives the court of jurisdiction over plaintiff's claim. *See Adams By Adams*, 807 F.2d at 321. Nonetheless, theoretically at least, plaintiff still has a recourse. Under 28 U.S.C. § 2679(d)(5):

Whenever an action or proceeding in which the United States is substituted as the party defendant under this subsec-

tion is dismissed for failure first to present a claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title if—

> (A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and

> (B) the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action.

28 U.S.C. § 2401(b) gives a plaintiff two years after a claim accrues to present his claim to the appropriate federal agency. In the case at bar, the acts complained of, composition and delivery of the memoranda, occurred from January through May of 1988. The small claims action was instituted on June 27, 1988, well within the two year limitation. Therefore, had the small claims action been commenced before the agency it would have been timely. Pursuant to 28 U.S.C. § 2679(d)(5), then, the proper course is for the court to dismiss the action. Plaintiff is entitled to present his claim to the appropriate federal agency within 60 days after the filing of this Memorandum–Decision and Order. 28 U.S.C. § 2679(d)(5).[7]

Consequently, the action is dismissed without prejudice. Furthermore, in view of the dismissal, plaintiff's pending motion for summary judgment is denied. The clerk of the court shall enter judgment accordingly.

It is So Ordered.

---

[7]. If the agency denies plaintiff's claim for libel, he should not file another complaint alleging that Needling libelled him. He does not have a viable claim in a court of law. Since Needling was acting within the scope of her employment when she committed the acts complained of, *see supra* at 896–898, the action is one against the United States. *See* 28 U.S.C. § 2679(d). The United States, however, may not be sued for libel. 28 U.S.C. § 2680(h); *see supra* at 894.