**Michael G. DONIO, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 90–2522.

United States District Court, D. New Jersey.

Sept. 18, 1990.

Michael G. Donio, Cherry Hill, N.J., pro se.

Michael Chertoff, U.S. Atty. by Paul A. Blaine, Asst. U.S. Atty., for defendant, U.S.

## OPINION

COHEN, Senior District Judge:

This action comes before the Court on defendant's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction. For the reasons set forth below, we hold that this Court lacks jurisdiction over the subject matter of the present action and, accordingly, defendant's motion shall be granted.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Michael Donio, was the named defendant in a criminal case brought against him upon an indictment obtained by the United States Attorney for the District of New Jersey in United States District Court in Trenton. On May 26, 1988, defendant entered a plea of guilty to one count of illegal use of the mails to distribute child

pornography. Peter Harvey was the Assistant United States Attorney responsible for the prosecution of that case. After Donio's guilty plea, Peter Harvey gave a statement to a reporter for the Philadelphia Inquirer concerning the nature of the charge, the consideration given Donio in exchange for the plea, and various details of background information. These statements were published in the May 27, 1988 New Jersey edition of the Inquirer.[1]

On May 1, 1990, plaintiff commenced an action in the Superior Court of New Jersey against Peter Harvey individually. Plaintiff alleges that the statements in the May 27, 1990 article were false, that Harvey libeled and defamed him, and that plaintiff suffered economic and non-economic injury as a result of those statements.

Pursuant to 28 U.S.C. sections 2679(d)(2) and (4) (West Supp.1990), the action was removed to this Court and, upon the certification of the Attorney General that Harvey was acting within the scope of his employment with the United States Department of Justice, the United States of America was substituted for Harvey as defendant. Defendant now moves to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1), on the ground that the United States is immune from liability for defamation.

## II. DISCUSSION

### A. The Federal Employees Liability Reform and Tort Compensation Act of 1988

The Federal Employees Liability Reform and Tort Compensation Act of 1988 ("FELRTCA"), Pub.L. 100–694, 102 Stat. 4563, was enacted in response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). In *Westfall*, the Court lessened the immunity previously available to federal employees for common law torts by holding that such employees are immune from suit only if the employee was acting within the scope of his or her employment and was exercising governmental discretion. The purpose of FELRTCA was to " 'return Federal employees to the status they held prior to the *Westfall* decision,' that is, a status of absolute immunity for activities within their scope of employment." *Melo v. Hafer*, 912 F.2d 628, 639 (3d Cir.1990) (quoting H.R.Rep. No. 100–700, 100th Cong., 2d Sess., *reprinted in* 1988 *U.S. Code Cong. & Admin.News*, 5945, 5947).

Pursuant to 28 U.S.C. § 2679(d)(2), any civil action or proceeding commenced against a federal employee in a state court shall be removed to a United States District Court upon certification by the Attor-

---

**1.** The article reads, in full:

A Cherry Hill man who claimed psychic powers and asked parents to mail him photos of their children being physically disciplined pleaded guilty yesterday in federal District Court in Trenton to one count of circulating child pornography.

Michael Donio, 42, of the 1700 block of Maple Avenue, is to be sentenced by U.S. District Judge Clarkson S. Fisher on July 18, according to assistant U.S. attorney Peter Harvey.

Donio faces a maximum sentence of 10 years in prison and a $100,000 fine. Harvey said Donio sent an undercover state police officer a poster displaying 40 pictures of a young girl having sex with an adult.

In exchange for his guilty plea and cooperation, three counts of distributing child pornography against Donio were withheld, Harvey said.

State police and postal inspectors began tracking Donio's activities through his business, the Occult Church, which he operated from his Colwyck residence under various aliases, including the Rev. Greenwood, Harvey said.

Postal inspectors, the U.S. Attorney's Office and state police searched Donio's home March 8 after a warrant was issued by U.S. District Judge Jerome Simandle in Camden.

An ad in sex-cult periodicals had said that Rev. Greenwood could excise demons in young children who misbehaved if given pictures of them being spanked or disciplined, Harvey said.

'He (Donio) was dead serious talking about the ceremonies he would perform to excise the demons from his clients' children,' Harvey said. 'He would put different colored candles in a semicircle around the photos and then perform a chanting ritual.'

Investigators also are developing information Donio supplied to trace the origin of pornographic pictures of children that originated in Texas, Georgia and New England, Harvey said.

Philadelphia Inquirer, May 27, 1988, at ___, col. 1.

ney General that the defendant employee was acting within the scope of his employment.[2] The section provides that:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(d)(2).

■ In *Melo*, the Third Circuit recently held that the government's scope of employment certification, while conclusive for the purposes of removal, is thereafter subject to judicial review. *Melo v. Hafer, supra.* The court based its reasoning on the language, structure, and legislative history of the FELRTCA. The court noted that other courts have divided on this issue. As several of these cases have noted, however, the United States has changed its position and now concedes that the district court may review the Attorney General's certification, although the government has contended that it should be given deference. *See, e.g., Petrousky v. United States,* 728 F.Supp. 890, 891–95 (N.D.N.Y.1990).

This Court must review the certification issued in this case. The issue of whether

Harvey acted within the scope of his employment in making the statement to the Philadelphia Inquirer is the determinative jurisdictional issue. If he was acting within the scope of his employment, this Court will not have subject matter jurisdiction since it is beyond dispute that the United States is immune from liability for defamation actions.[3] Although the standard for such a review has not been addressed in this Circuit, the scope of employment determination by the Attorney General is a factual issue going to this Court's subject matter jurisdiction and, therefore, the Court's resolution of this issue must at least satisfy the standards applicable to any other *factual determination made pursuant to Fed.R.Civ.P. 12(b)(1)* as will be discussed below.

■ Initially, however, we consider whether or not to give deference to the Attorney General's certification. In *Petrousky*, the court held that the certification should not be given deference because of constitutional due process concerns. The court held that plaintiffs had a constitutionally recognized property interest in litigating claims in the nation's courts and that section 2769 provides for no opportunity to be heard on the scope of employment issue. *Id.* at 892–94. Additionally, there is a strong potential for bias on the part of the certifier since "the Assistant U.S. Attorney who is defending such a case [who is given authority pursuant to C.F.R. to make the certification] may ... almost certainly assure the demise of the action he defends when certifying that the actions complained of are ones which a federal employee undertook within the scope of her employment." *Id.* at 894. Although not determinative in this case in light of our ultimate holding, we nonetheless decline to give deference to the certification as part

---

**2.** As noted below, the determination as to whether a federal employee was acting within the scope of employment is to be determined according to the law of the state where the alleged wrong occurred. *See, Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955).

**3.** Under the Federal Tort Claims Act, the United States has specifically retained its sovereign immunity for "[a]ny claim arising out of ... libel [or] slander...." 28 U.S.C. § 2680(h) (West Supp.1990). *See also, Quinones v. United States,* 492 F.2d 1269, 1279–81 (3d Cir.1974).

of our factual inquiry.[4]

### B. The Applicable Standard Under Rule 12(b)(1)

The burden of proving subject matter jurisdiction rests with the plaintiff. *Gibbs v. Buck*, 307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939); *Mortensen v. First Federal Savings & Loan Ass'n.*, 549 F.2d 884 (3d Cir.1977); *cf. Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). Often treated similarly, there are important distinctions between a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Unlike a dismissal under 12(b)(6), a dismissal under 12(b)(1) is not on the merits. Additionally, a court may review and receive any competent evidence to resolve factual disputes concerning the existence of subject matter jurisdiction. *See*, 2A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice*, § 12.07[2.–1] (2d ed. 1990).

Generally, in resolving a motion to dismiss for lack of subject matter jurisdiction there are three bases for relief that a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986). However, our Circuit has noted "a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face [a facial attack] and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact [a factual attack], quite apart from any pleadings." *Mortensen*, 549 F.2d at 891. The significance of this distinction is that in a facial attack,

> the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.*

Our inquiry may proceed as a factual attack. Although defendant does not contest that the statements were in fact made, it is the *significance* of the statements (i.e. whether or not they were made within the scope of employment of Assistant United States Attorney Harvey),[5] not the fact of their making or their truthfulness[6] that must be determined.

Under this framework, we now proceed to determine whether or not the Attorney General's certification is supported by enough facts to sustain defendant's motion to dismiss.

### C. Scope of Employment Under New Jersey Law

Pursuant to 28 U.S.C. § 1346(b), the scope of employment determination is to be

---

4. We note that the government has not in its brief asserted that we should give deference to the certification.

5. Whether or not an act is within the scope of employment is a question of fact. *See, Marley v. Palmyra*, 193 N.J.Super. 271, 295–96, 473 A.2d 554 (N.J.Super.Ct.Law Div.1983).

6. Plaintiff, in his *pro se* response, contests the truthfulness of many of the allegations allegedly made by Harvey in the Philadelphia Inquirer article. We do not hold that the truthfulness of the statements is entirely irrelevant to our inquiry; totally unfounded statements may indicate that the speaker was acting for his own purposes rather than for those of his employer. As indicated below, however, a statement may be untruthful and still be made within the scope of employment. In sum, the truthfulness of a statement made during the course of employment is only one of several factors that must be considered.

made "in accordance with the law of the place where the act or omission occurred," hence, New Jersey law governs.

The New Jersey Supreme Court has adopted the Restatement definition of "scope of employment." *See Di Cosala v. Kay,* 91 N.J. 159, 169, 450 A.2d 508 (N.J. Sup.Ct.1982). Section 228 of the *Restatement (Second) of Agency* (1958) provides:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master; ...

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.[7]

Comment f to Section 229 (set forth in the margin) notes that an act may be within the scope of employment although tortious, if the act is reasonably foreseeable by the servant. *Id.* at § 229, comment f; *see also id.* § 231 and comment a; *but cf. Cosgrove v. Lawrence,* 214 N.J.Super. 670, 676, 520 A.2d 844 (N.J.Super.Ct.Law Div.1986) ("motivation to serve the master is relevant [yet] foreseeability plays no significant part in determining whether conduct is within the scope of employment"), *aff'd,* 215 N.J.Super. 561, 522 A.2d 483 (N.J.Super.Ct.App.Div.1987). Additionally, under New Jersey law, "whether the conduct is intentional or negligent is generally irrelevant." *Cosgrove,* 214 N.J.Super. at 676,

520 A.2d 844 (citing *Schultz v. Roman Catholic Archdiocese of Newark,* 95 N.J. 530, 535 n. 1, 472 A.2d 531 (N.J.Sup.Ct. 1984)).

Under the Restatement definition, as well as under the case law, it is apparent that Harvey's statement was made within the scope of his employment as an Assistant United States Attorney.

Pursuant to Department of Justice guidelines ("Guidelines"), Justice Department employees are expressly given authority to make statements to the media. 28 C.F.R. § 50.2 (1989). According to the Guidelines, "there are valid reasons for making available to the public information about the administration of the law [such as fostering] public understanding[ ] of the problems of controlling crime and administering government." *Id.* § 50.2(a)(2). Specifically, the Guidelines provide:

(3) Personnel of the Department of Justice, subject to specific limitations imposed by law or court rule or order, may make public the following information:

(i) The defendant's name, age, residence, employment, marital status, and similar background information.

(ii) The substance or text of the charge, such as a complaint, indictment, or information.

(iii) The identity of the investigating and/or arresting agency and the length or scope of an investigation.

(iv) The circumstances immediately surrounding an arrest, including the time and place of arrest, resistance, pursuit, possession and use of weapons, and a

---

7. Additionally, Section 229 provides:

(1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

...

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such act will be done;

(g) the similarity in quality of the act done to the act authorized....

*Restatement (Second) of Agency* § 229 (1958).

description of physical items seized at the time of arrest.

Disclosures should include only incontrovertible, factual matters, and should not include subjective observations. In addition, where background information or information relating to the circumstances of an arrest or investigation would be highly prejudicial or where the release thereof would serve no law enforcement function, such information should not be made public.

*Id.* § 50.2(3).[8]

Although plaintiff concedes that it is within the scope of a prosecutor's office to issue press statements, as indicated above, plaintiff's principal contention is that many of the statements were either false, or were made in such a manner as to give a false impression of him.[9] Even if we accept plaintiff's contentions, however, this alone would not compel the conclusion that the statements were not made within the scope of employment. New Jersey courts have emphasized that, in order to be within the scope of employment the servant must be motivated, at least in part, by a purpose to serve the master. *See, e.g., Cosgrove*, 214 N.J.Super. at 677–78, 520 A.2d 844. So long as the employee is not motivated by purely personal reasons, his or her acts may be within the scope of employment, though "quite improper," *Di Cosala*, 91 N.J. at 169, 450 A.2d 508 (quoting W. Prosser, *Law of Torts* 460–61 (4th ed. 1971)) or

"imbecilic." *Gibson v. Kennedy*, 23 N.J. 150, 158, 128 A.2d 480 (N.J.Sup.Ct.1957); *see also, The H.S., Inc.*, 130 F.2d 341, 343 (3d Cir.1942) (employer liable even though employee demonstrated hatred of victim by his brutal method of removing trespasser).

Based on the papers before us, we cannot say that Harvey was acting solely for his own reasons in issuing the statement. Additionally, such statements are authorized as part of a prosecutor's regular responsibilities in administering the law. Moreover, even if some of the statements were factually imprecise or unauthorized, they were "nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment." *Restatement (Second) of Agency* § 229(2).

## III. CONCLUSION

For the foregoing reasons we uphold the Attorney General's certification and hold that Harvey was acting within the scope of his employment as that doctrine is defined under New Jersey law. Accordingly, this court lacks subject matter jurisdiction over the present case as the United States was properly substituted as defendant, and the United States has retained its sovereign immunity for defamation actions.

8. Subsection (b) of the Guidelines goes on to provide examples of prejudicial information which personnel should refrain from making available:

(i) Observations about a defendant's character.

(ii) Statements, admissions, confessions, or alibis attributable to a defendant, or the refusal or failure of the accused to make a statement.

(iii) Reference to investigative procedures such as fingerprints, polygraph examinations, ballistic tests, or laboratory tests, or to the refusal by the defendant to submit to such tests or examinations.

(iv) Statements concerning the identity, testimony, or credibility of prospective witnesses.

(v) Statements concerning evidence or argument in the case, whether or not it is antici-

pated that such evidence or argument will be used at trial.

(vi) Any opinion as to the accused's guilt, or the possibility of a plea of guilty to the offense charged, or the possibility of a plea to a lesser offense.

28 C.F.R. § 50.2(b)(6).

9. For example, plaintiff does not deny that he pleaded guilty to the circulation of child pornography, that he placed several advertisements under pseudonyms (including the Rev. Greenwood) in tabloids advertising his services as a professional psychic, and that he advertised in adult publications offering to buy and sell "antique erotica." As we read plaintiff's papers, he argues (in addition to his claims of entrapment), that Harvey's references to these facts made it appear that his psychic phenomena business was being used as a front to obtain pornographic materials, while these pursuits were actually unrelated.