Randy **BORAWSKI**, Plaintiff,

v.

William J. **HENDERSON,**
et al., Defendants.

Civil Action No. 01–2215 (MLC).

United States District Court,
D. New Jersey.

June 10, 2003.

Michael R. Curran, Clifton, NJ, for Plaintiff.

John Andrew Ruymann, Office of the United States Attorney, Trenton, NJ, for Defendants.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the motions by the United States of America ("the United States" or "the Government") and the defendant William J. Henderson, in his capacity as the Postmaster General ("the Postmaster General"), (collectively "the federal defendants") to (1) substitute the United States for Judith A. Fisco ("Fisco") as defendant;[1] and (2) dismiss the amended complaint for (a) lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and (b) failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). The plaintiff, Randy Borawski ("Borawski"), opposes the motions. (2–19–03 Notice of Obj. to Certif. of Scope of Fed. Empl. ("2–19–03 Notice of Obj."); Pl.'s Mem.)[2] For the reasons stated herein, the motions will be granted and the action will be dismissed.

## BACKGROUND

### I. Facts

Borawski has been both a letter carrier for the United States Postal Service ("USPS") and a shop steward for the National Association of Letter Carriers ("NALC" or "the Union"), since 1979. (Am.Compl.¶ 7.) At all times relevant to this action, he has been stationed at a post office in Bound Brook, New Jersey. Borawski brings this action against his supervisor, Fisco, and the Postmaster General, seeking damages resulting from, *inter alia*, an allegedly defamatory memorandum written and disseminated by Fisco. (*Id.* ¶¶ 2, 16.)

Fisco was a supervisor at a post office in Edison, New Jersey until August 1997 when she was transferred to the Bound Brook post office. (*Id.* ¶ 9.) According to Borawski, union officials informed him that Fisco "had been pushed out of the Edison facility, where she was a supervisor, on

---

1. The Government has filed a Notice of Substitution, which we refer to as a motion to substitute. (*See* 1–7–03 Notice of Subst.)

2. Borawski's notice of objection has been improperly docketed as a notice of motion.

account of numerous bizarre incidents." [3] (*Id.*)

Borawski alleges that Fisco's "bizarre" behavior continued at the Bound Brook post office. (*Id.* ¶ 10.) Borawski allegedly filed numerous grievances with Fisco related to, among other things, Fisco's behavior. (*Id.*) "In violation of the collective bargaining agreement," Fisco allegedly refused to process these grievances, and, "instead, sought out ways to retaliate against [Borawski], not allowing him to use an office telephone to conduct union business, attempting to impose lengthy suspensions for *de minimis* infractions, etc." (*Id.*) Borawski's alleged "*de minimis* infractions" included "driving with his postal vehicle door open while turning left into an intersection" and "backing into the post office loading dock with his postal vehicle door open." (*Id.*, Ex. C.) While the Union Management Pairs ("UMPS") found that Fisco's proposed suspensions for these infractions were excessive, it also noted that Borawski's conduct was "contrary to postal regulations." (*Id.*)

The Postmaster at the Bound Brook post office, Estella Hart ("Hart"), signed a document dated November 10, 1997, in which she (1) agreed that Fisco was violating her collective bargaining obligations; and (2) "assured the Union" that Fisco would be subject to disciplinary action should such violations continue. (*Id.* ¶ 10 & Ex. D.) As a result, Fisco allegedly "attempted to form a truce with ... [Borawski] and approached him to 'help [her] keep [her] job.'" (*Id.* ¶ 11.) Hart allegedly advised Borawski "to 'stay away' from Fisco and that Fisco was out to get him." (*Id.* ¶ 12.)

Borawski further alleges that in early 2000 Fisco harassed two other postal employees. (*Id.* ¶ 14.) NALC members sent a petition related to these and other incidents to the NALC president, who then sent a letter to Hart complaining about Fisco. (*Id.* ¶ 15.) In alleged retaliation, Fisco wrote a memorandum to Hart including information from Borawski's employee medical records ("the memorandum").[4] (*Id.* ¶ 16.) The memorandum responded to a letter Fisco had received from Hart and addressed, *inter alia*, sick leave policy, union matters, Fisco's workplace interactions with Borawski, and matters related to other employees she supervised. (*Id.*, Ex. A.) Fisco stated in this letter:

> I have documented [ ] Borowski's behavior to you verbally many times and I do have notes. I have submitted to you as documentation on a grievance a statement from a carrier which states [ ] Borawski is harassing him to sign an untrue statement. I informed you several months ago when [ ] Borawski told me he signed himself into a psychiatric ward a couple of years ago, "because if I didn't I would have killed my ex wife." I recently informed you of [ ] Borawski screaming at me over the phone and threatening to write my ass up. I gave [ ] Borawski an official discussion in this regard and yet he has made inappropriate comments in front of you, which seem to go unnoticed. I conduct myself

---

**3.** For example, on one occasion an Edison postal clerk had been "canceling" her child's wedding invitations instead of "putting them through the automated cancellation machine." (Am.Compl.¶ 9.) "Fisco allegedly grabbed one of the invitations from the employee's hand, ripped it, threw it on the floor and began stamping on the invitation with her foot." (*Id.*) Borawski alleges that Fisco was "placed on three-day suspension for this behavior." (*Id.*)

**4.** Fisco had access to Borawski's medical records in her role as supervisor. (Am. Compl.¶ 16.)

in a professional manner with all employees.

(*Id.*)

Fisco allegedly "published" the memorandum by "disseminating [it] to individuals throughout Bound Brook and the region." (*Id.* ¶ 16.) Borawski contends that "[a]s a result of the publication of this material about a confidential matter, [he] suffered severe humiliation, embarrassment for his family and himself, anxiety concerning his job security and future with USPS and extreme emotional distress." (*Id.*)

Borawski's attorney wrote a letter to USPS "demanding an apology and repudiation of [Fisco's] actions." (*Id.* ¶ 17.) Steven Kocylowskyi responded on behalf of USPS in a letter dated July 25, 2000 ("7–25–00 letter"). (*Id.*, Ex. B.) The 7–25–00 letter stated that (1) USPS "regret[ted] that the comments were made;" (2) Fisco had accepted an assignment in another post office; and (3) the personal information in the memorandum would neither appear in Borawski's personnel file nor have an adverse impact on his USPS employment. (*Id.*) Fisco was transferred in June 2000 to a post office in Somerville, New Jersey (*Id.* ¶ 18.)

## II. *Procedural History*

Borawski instituted this action on May 4, 2001. (Compl.) On November 7, 2001, the United States Attorney's Office filed a Certification of Scope of Federal Employment ("11–7–01 Certification") and Notice of Substitution, seeking to substitute the United States for Fisco as defendant. (11–7–01 Certif.; 11–7–01 Notice of Subst.) Borawski filed an objection to the 11–7–01 Certification on November 21, 2001. (11–21–01 Obj.)

The Court entered an order substituting the United States for Fisco, on November 29, 2001. (11–29–01 Order.) However, the Court withdrew the 11–29–01 Order on December 13, 2001, and granted Borawski leave to amend the complaint "for the purpose of clarifying his claim that [Fisco] acted outside the scope of employment in the commission of the acts giving rise to the Complaint," on September 9, 2002. (12–13–01 Order; 9–9–02 Order.)

Borawski filed the amended complaint on December 20, 2002, seeking damages for (1) negligent hiring and retention (Count One); (2) defamation (Count Two); (3) slander *per se* (Count Three); (4) invasion of privacy (Count Four); (5) intentional infliction of emotional distress (Count Five); and (6) violation of the New Jersey Conscientious Employee Act ("CEPA"), N.J.S.A. §§ 34:19–1 through 8 (Count Six). (Am.Compl.) On January 7, 2002, the United States Attorney's Office filed (1) a second Certification of Scope of Federal Employment ("1–7–03 Certification"); (2) a second Notice of Substitution; and (3) a motion to dismiss the amended complaint. (1–7–03 Certif.; 1–7–03 Notice of Subst.; 1–7–03 Notice of Mot.) The Court received Borawski's opposition to the motion and objection to the 1–7–03 Certification, on February 19, 2003. (Pl.'s Mem.; 2–19–03 Notice of Obj.) We received the federal defendants' reply brief on February 25, 2003 and held oral argument on May 19, 2003. (Defs.' Reply.)

The federal defendants argue that (1) the United States should be substituted for Fisco and all claims against her should be dismissed; (2) the Court lacks subject matter jurisdiction over Borawski's intentional-tort and negligence claims against the Postmaster General and the United States (as substituted for Fisco), because these claims are not cognizable under the

Federal Tort Claims Act ("FTCA");[5] and (3) Borawski fails to state a claim for which relief can be granted under CEPA. (Defs.' Br. in Supp. ("Defs.' Br.").)

## DISCUSSION

### I. Standards Governing Motion to Dismiss

#### A. Rule 12(b)(1)

A court addressing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is not restricted to the face of the pleadings. *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Robinson v. Dalton,* 107 F.3d 1018, 1021 (3d Cir.1997). Rather, we may consider declarations or other evidence to resolve factual questions bearing on the jurisdictional issue without converting the motion into one for summary judgment. *Id.* The party that invokes the court's jurisdiction bears the burden of persuasion when the subject matter jurisdiction of the court is challenged. *Rudolph v. Adamar of N.J., Inc.,* 153 F.Supp.2d 528, 533 (D.N.J.2001).

#### B. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) does not attack the merits of the case, but merely tests the legal sufficiency of a complaint. *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). A court must accept as true all well-pleaded allegations and view them in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985). We may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, at minimum, "the pleadings [must] give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 149–50 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99).

### II. Motion to Substitute the United States for Fisco

The Federal Employees Liability Reform and Tort Compensation Act ("the Westfall Act") confers absolute immunity on federal employees for torts committed within the scope of their employment. 28 U.S.C § 2679(b)(1); *United States v. Smith,* 499 U.S. 160, 164, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991). The United States Attorney's Office has the authority to certify that an employee was acting within the scope of employment "at the time of [an] incident through which [a] claim arose" ("scope certification") and request that the United States be substituted as defendant. *Melo v. Hafer,* 912 F.2d 628, 639–40 & n. 14 (3d Cir.1990) (quoting 28 U.S.C. § 2679(d)(1)).[6]

---

**5.** The federal defendants also argue that the Court lacks subject matter jurisdiction over these claims because (1) Borawski's exclusive remedy is the Federal Employees Compensation Act ("FECA"); and (2) his claims are preempted by the Postal Reorganization Act and the Civil Service Reform Act. Because we will conclude that the Court lacks subject matter jurisdiction over these claims pursuant to the FTCA, we need not address these arguments.

**6.** The Westfall Act provides that the United States Attorney General may certify that a federal employee was acting within the scope of employment. 28 U.S.C. § 2679(d)(1). However, "[t]he United States Attorney General has delegated this certification authority to United States Attorneys in consultation with the Department of Justice." *Melo,* 912 F.2d at 640 n. 14.

A district court may rely on pleadings, documentary evidence, affidavits, and the scope certification in ruling on a motion to substitute by the Government. *Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir.1992). Because such motions implicate the Government's interest in "protect[ing] federal employees from the uncertain and intimidating task of defending suits that challenge conduct within the scope of their employ," the district court should only permit discovery or conduct an evidentiary hearing where there is a "genuine issue of fact material to the scope of employment question." *Id.* A scope certification is prima facie evidence that an employee's challenged conduct was within the scope of employment. *Id.* Thus, a plaintiff challenging a scope certification must present specific facts rebutting it. *Id.*

Scope of employment is determined "in accordance with the law of the place where the act or omission occurred." *Melo*, 912 F.2d at 642. In New Jersey, conduct is generally considered to be within the scope of employment if "it is of the kind [that the servant] is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the master." *Di Cosala v. Kay*, 91 N.J. 159, 169, 450 A.2d 508, 513 (1982) (internal quotation omitted). Where these criteria are satisfied, even intentional torts and crimes may be considered within the scope of employment. *Roth v. First Nat'l Bank of N.J.*, 169 N.J.Super. 280, 286, 404 A.2d 1182, 1185 (App.Div.1979); *see Alexander v. Riga*, 208 F.3d 419, 432 & n. 9 (3d Cir.2000) (racial discrimination within employment scope); *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 425, 650 A.2d 958, 968 (1994) (retaliatory conduct within employment scope); *Donio v. United States*, 746 F.Supp. 500, 506 (D.N.J. 1990) (defamatory statements within employment scope).

Assistant United States Attorney Michael A. Chagares ("the AUSA") has certified that Fisco was "acting within the scope of her employment with the United States Postal Service at the time of the conduct alleged in the Amended Complaint." (1–7–03 Certif.) In rebuttal, Borawski contends that Fisco engaged in tortious and malicious behavior when she "took advantage of her ability to gain access to [Borawski's] medical records in order to make defamatory statements based on these records which she published within [Borawski's] workplace." (11–21–01 Obj.) He argues that defamation is neither conduct (1) commonly engaged in by a supervisor in Borawski's position; nor (2) serving the benefit of USPS. (Pls.' Br. at 23.)

Borawski's arguments are misplaced. We do not look to a plaintiff's claims (i.e., defamation) to determine whether an employee was acting within the scope of employment; rather, we look to the employee's conduct "at the time of the incident out of which the claim arose."[7] *See* 28 U.S.C. § 2679(d)(1). Borawski does not present any specific facts disputing that Fisco's writing and dissemination of the memorandum (1) was "the kind of work Fisco was employed to perform;" (2) occurred "substantially within the authorized time and space limits;" and (3) was "actuated, at least in part, by a purpose to serve the master."[8] *See Di Cosala*, 91 N.J. at 169, 450 A.2d at 513.

---

7. Following Borawski's analysis, the Westfall Act would be practically inconsequential, because intentional torts and negligence rarely, if ever, (1) constitute an employee's typical duties; or (2) serve to benefit the Government as employer.

8. On the contrary, the memorandum addressed sick leave policy, union matters, Fis-

Borawski also contends that Fisco engaged in a pattern of harassment not within the scope of her federal employment. Specifically, he alleges that Fisco (1) did not "allow[ ] him to use an office telephone to conduct union business;" and (2) attempted to "impose lengthy suspensions [on him] for *de minimis* infractions."[9] (Am.Compl.¶ 10.) He does not, however, present any evidence to dispute the AUSA's assertion that this conduct was within the scope of Fisco's employment.

We conclude that Borawski has not met his burden of rebutting the 1–7–03 Certification and, therefore, that Fisco is entitled to absolute immunity under the Westfall Act. Accordingly, we will grant the motion to substitute the United States for Fisco as defendant and dismiss Counts Two through Six with respect to Fisco.

### III. *Sovereign Immunity and the FTCA*

■■■■ The United States is immune from suit except to the extent that it consents to be sued. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Absent a specific legislative waiver of sovereign immunity, courts lack subject matter jurisdiction over claims against the United States, its agencies, and federal officials acting in their official capacities. *Id.; Koss v. United States,* 69 F.3d 705, 707 (3d Cir.1995); *see*

*Franchise Tax Bd. v. U.S. Postal Serv.,* 467 U.S. 512, 517–18, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984) (sovereign immunity extends to USPS). Moreover, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996).

■■■■ The Postal Reorganization Act ("PRA") creates a limited waiver of sovereign immunity with respect to suits against USPS through its "sue and be sued" clause. 39 U.S.C. § 401(1); *Loeffler v. Frank,* 486 U.S. 549, 555–56, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988). However, tort actions against USPS are also subject to the provisions of the FTCA. 39 U.S.C. § 409(c); 28 U.S.C. § 2679(a). The FTCA constitutes a limited waiver of sovereign immunity with respect to certain common-law-tort claims ("FTCA's general waiver"), but preserves sovereign immunity against, *inter alia,* "[a]ny claim arising out of assault, battery ... libel, [or] slander ..." ("intentional-tort exception"). 28 U.S.C. §§ 1346(b)(1), 2674, 2680(h).

#### A. *Intentional Torts*

Borawski claims that the United States, as substituted for Fisco, and the Postmaster General, on a theory of vicarious liability, are liable for (1) defamation (Count

co's workplace interactions with Borawski, and matters related to other employees she supervised. (Am. Compl., Ex. A.; Defs.' Br. at 13.) Thus, the production of this type of memorandum appears to be among the kinds of work that Fisco was employed to perform as a supervisor. *See Di Cosala,* 91 N.J. at 169, 450 A.2d at 513. Additionally, the memorandum was communicated within the workplace, and, thus, occurred within authorized time and space limits. *See id.* Finally, Fisco sent the memorandum to her superior, Hart, in response to a letter Hart had written to Fisco. (Am.Compl., Ex. A.) Accordingly, it appears that her conduct was actuated, at

least in part, to serve Hart's purposes. *See Di Cosala,* 91 N.J. at 169, 450 A.2d at 513. Although Borawski states that the memorandum also was disseminated "throughout Bound Brook and the region," he does not indicate to whom the memorandum was disseminated or why such dissemination was not within the scope of Fisco's employment. (Am.Compl.¶ 16.)

9. Borawski also alleges that Fisco harassed other employees. (Am.Compl.¶¶ 9, 14.) Because he has no standing with respect to such allegations, we will not address them.

Two); (2) slander *per se* (Count Three); (3) invasion of privacy (Count Four); and (4) intentional infliction of emotional distress (Count Five). We disagree.

■■■ The FTCA bars claims against the United States for defamation and slander. *Brumfield v. Sanders*, 232 F.3d 376, 382 (3d Cir.2000) (equating defamation with libel and slander). Accordingly, we lack subject matter jurisdiction to entertain these claims. Moreover, the only allegations within the amended complaint supporting plaintiff's tort claims are related to Fisco's alleged defamatory and slanderous memorandum. Because the FTCA precludes claims "arising out of" defamation and slander, the invasion-of-privacy and intentional-infliction-of-emotional-distress claims also must fail.[10] *See* 28 U.S.C. § 2680(h). Accordingly, we will dismiss Counts Two, Three, Four, and Five for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### B. *Negligent Hiring and Retention*

Borawski claims that the Postmaster General, as representative of the USPS, is liable for the negligent hiring and retention of Fisco (Count One). The Postmaster General maintains that Count One arises out of Counts Two through Five and, therefore, is barred by the intentional-tort exception. We agree with the Postmaster General.

The meaning of the FTCA's "arising out of" clause as it pertains to negligent hiring, retention, and supervision claims has been

a source of disagreement among the circuits as well as the Supreme Court Justices. In *Shearer v. United States* ("*Shearer I*"), the Third Circuit held that the "FTCA does not necessarily bar a cause of action in negligence, even if the injury is directly caused by the assault and battery of a government employee." 723 F.2d 1102, 1106 (3d Cir.1983). Thus, the Court declined to dismiss a claim against the United States for its negligent retention and supervision of a known-violent Army private who murdered another Army private. *Id.* at 1107–08. The Court also held that the claims against the United States were not barred by the *Feres* doctrine, which provides that a serviceman may not recover under the FTCA for injuries arising out of activity incident to service. *Id.* at 1105–06; *see Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

The United States Supreme Court reversed *Shearer I* in *United States v. Shearer (Shearer II)*, 473 U.S. 52, 59, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). A plurality of the Court read the intentional-tort exception broadly, holding that the negligent retention and supervision claims arose out of the Army private's assault and battery and, therefore, were barred by sovereign immunity. *Id.* at 55–56, 105 S.Ct. 3039. The plurality provided the following explanation:

> No semantical recasting of events can alter the fact that the battery was the immediate cause of [the plaintiff's]

---

**10.** Borawski also seems to contend that Fisco's other alleged retaliatory actions, including (1) denying him office-telephone use to conduct union business and (2) attempting to "impose lengthy suspensions [on him] for *de minimis* infractions," constituted intentional infliction of emotional distress. (Am. Compl.¶ 10.) However, under New Jersey law "intentional infliction of emotional distress comprehends conduct 'so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Subbe–Hirt v. Baccigalupi*, 94 F.3d 111 (3d Cir.1996). These alleged retaliatory actions do not reach that threshold. Thus, we hold that Borawski fails to state a claim upon which relief can be granted with respect to them.

death.... [The plaintiff] cannot avoid the reach of § 2680 by framing her complaint in terms of negligent failure to prevent the assault and battery.... There is no indication that Congress distinguished between "negligent supervision" claims and *respondeat superior* claims, with only the latter excluded under the Act. Instead, it appears that Congress believed that § 2680(h) would bar claims arising out of a certain type of factual situation—deliberate attacks by Government employees.

*Id.* at 55, 105 S.Ct. 3039. While four Justices declined to join this portion of the plurality's opinion and Justice Powell took no part in the decision, the Court nonetheless reversed, holding that the Third Circuit had misapplied the *Feres* doctrine. *Id.* at 59–60, 105 S.Ct. 3039.

The Supreme Court revisited the breadth of the intentional tort exception in *Sheridan v. United States,* 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988). In *Sheridan,* the plaintiffs brought a negligence action against the Government after an intoxicated serviceman ("the tortfeasor") fired a rifle at them. *Id.* at 394, 108 S.Ct. 2449. Three naval corpsmen discovered the tortfeasor brandishing a loaded rifle before the attack, but failed to contain him or alert authorities, in violation of Navy regulations. *Id.* at 359, 108 S.Ct. 2449.

The *Sheridan* Court held that the "arising out of" clause did not protect the Government from liability based upon the negligence of the three naval corpsmen, because they failed to prevent a foresee-able assault and battery. *Id.* at 401, 108 S.Ct. 2449. However, liability did not arise from the tortfeasor's intentional tort; rather, the corpsmen breached an "independent affirmative duty," which would have existed regardless of whether the tortfeasor was a federal employee.[11] *Id.* at 401–02, 108 S.Ct. 2449. The Court reasoned that "it would seem perverse to exonerate the Government because of the happenstance that the [tortfeasor] was on a federal payroll." *Id.* at 403, 108 S.Ct. 2449. Thus, the *Sheridan* Court limited *Shearer II* in cases involving an affirmative duty independent of a tortfeasor's status as government employee, but expressly declined to resolve whether the Government could ever be liable for negligently hiring, retaining, or supervising a tortfeasor. *Id.* at 402 n. 8, 108 S.Ct. 2449.

The majority of the circuits addressing the meaning of the "arising out of" clause have adopted the *Shearer II*-plurality view that a negligent hiring, supervision, or retention claim necessarily arises out of an underlying intentional tort, precluding government liability under the FTCA. *See Guccione v. United States,* 847 F.2d 1031 (2d Cir.1988) (plaintiff allegedly defamed by government employee previously convicted of fraud); *Thigpen v. United States,* 800 F.2d 393 (4th Cir.1986) (two child-patients sexually abused by corpsmen previously convicted of "indecency with a child"); *Leleux v. United States,* 178 F.3d 750 (5th Cir.1999) (naval recruiter allegedly "took unfair advantage of his position" to infect recruit with sexually-transmitted disease; government allegedly misled re-

---

**11.** The *Sheridan* Court also noted that because the tortfeasor was not acting within the scope of his employment in committing the assault and battery, his tort fell outside of the FTCA's general waiver and, therefore, the intentional-tort exception did not apply. 487 U.S. at 400–01, 108 S.Ct. 2449. The Fifth Circuit elaborated on this point, explaining that, "[a] Government employee acting *outside the scope of his employment* always falls outside the purview of the FTCA." *Leleux v. United States,* 178 F.3d 750, 757 n. 6 (5th Cir.1999). Because Fisco was acting within the scope of her employment, her alleged torts fall within the purview of the FTCA.

cruit into believing naval regulations encouraged behavior); *Franklin v. United States,* 992 F.2d 1492 (10th Cir.1993) (unauthorized surgery caused patient's death; government allegedly failed to adequately assess ability to consent); *cf. Westcott v. City of Omaha,* 901 F.2d 1486 (8th Cir. 1990) (applying *Shearer II* plurality reasoning to state statute analogous to FTCA). These courts all applied the doctrine of sovereign immunity where potential liability depended upon a tortfeasor's Government-employee status, even though, in most cases, the Government was allegedly aware of the employee's tortious potential.

Only the Ninth Circuit has declined to follow the *Shearer II* plurality. *Senger v. United States,* 103 F.3d 1437 (9th Cir. 1996). The *Senger* Court acknowledged that the *Sheridan* Court "implied that it did not favor government liability under the FTCA in cases involving claims of negligent hiring and supervision," but nonetheless held that immunity for such claims would be "inconsistent with the purpose of the FTCA." *Id.* at 1441–42. We are unpersuaded by this analysis in light of (1) our duty to strictly construe the FTCA's waiver of sovereign immunity in favor of the sovereign, *see Lane,* 518 U.S. at 192, 116 S.Ct. 2092; and (2) the *Shearer II* plurality's convincing analysis of the intentional-tort exception, which is the prevailing view among the circuits. *Franklin,* 992 F.2d at 1498.

 The Third Circuit has not addressed the breadth of the intentional-tort exception since *Shearer I.* However, we hold that it likely would adopt the prevailing *Shearer II*-plurality view. *Accord Pottle v. United States,* 918 F.Supp. 843 (D.N.J.1996) (sovereign immunity where naval officer assaulted recruit during phys-

ical examination). Accordingly, because the Postmaster General's potential liability in negligence for Fisco's alleged intentional torts depends upon her status as a Government employee, we conclude that the Postmaster General is immune from Borawski's negligent-hiring-and-retention claim. We, therefore, will dismiss Count One for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

## IV. *CEPA*

Borawski finally claims that the United States, as substituted for Fisco, and the Postmaster General, as representative of USPS, are liable under CEPA. *See* N.J.S.A. §§ 34:19–1 through 8. The federal defendants argue that Borawski does not allege retaliatory action within the meaning of CEPA and, therefore, fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). We agree with the federal defendants.

 CEPA protects employees from "retaliatory action" by an "employer" for, *inter alia,* "disclos[ing], or threaten[ing] to disclose to a supervisor or to a public body an activity, policy or practice of the employer ... that the employee reasonably believes is in violation of a law." N.J.S.A. § 34:19–3. Under CEPA, "'retaliatory action' means the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. § 34:19–2(e). Retaliatory action under CEPA is confined to "completed ... personnel actions that have an effect on either compensation or job rank." *Hancock v. Bor. of Oaklyn,* 347 N.J.Super. 350, 360, 790 A.2d 186, 193 (App.Div.2002), *certif. granted,* 174 N.J. 191, 803 A.2d 1162 (2002) (following *Zamboni v. Stamler,* 847 F.2d 73, 82 (3d Cir.

1988) (predicting New Jersey Supreme Court's interpretation of unlawful-retaliation tort)).

■ Borawski alleges that Fisco sought to retaliate against him by denying him use of an office telephone to conduct union business and attempting to impose lengthy suspensions on him for *de minimus* infractions. (Am.Compl.¶ 10.) He further alleges that Fisco retaliated against him by writing the memorandum and disseminating it "throughout Bound Brook and the region." (*Id.* ¶ 16.) However, Borawski does not contend that he was ever discharged, suspended, or demoted. *See* N.J.S.A. § 34:19–2(e). He also does not allege that he suffered any other adverse employment action related to the "*terms or conditions* of his employment," *Id.* (emphasis added), or that there has been "an effect on either his *compensation or job rank.*" *Hancock*, 347 N.J.Super. at 360, 790 A.2d at 193 (emphasis added).

■ Borawski admits that USPS (1) expressed regret for Fisco's actions; (2) transferred her to another post office; and (3) reassured him that "he should be confident that he has a challenging and rewarding career ahead, which he and his family can look forward to with optimism and enthusiasm." (Am. Compl. ¶¶ 17–18 & Ex. B.) Allegations of harassment are insufficient to state a claim of retaliatory action. *Kadetsky v. Egg Harbor Twp. Bd. of Educ.*, 82 F.Supp.2d 327, 340 (D.N.J. 2000) (requiring "lasting prejudice"). Moreover, emotional distress alone does not constitute a cognizable injury under CEPA. *Hancock*, 347 N.J.Super. at 361, 790 A.2d at 194.

We conclude that Borawski fails to allege retaliatory conduct under CEPA. Therefore, we will dismiss Count Six for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).[12]

## *CONCLUSION*

For the reasons stated in this Memorandum Opinion, we conclude that (1) Fisco acted within the scope of her employment at the times of the incidents through which Borawski's claims arose; (2) the federal defendants are immune from suit for negligent hiring and retention, defamation, slander *per se*, invasion of privacy, and intentional infliction of emotional distress; and (3) Borawski fails to allege retaliatory action under CEPA. Accordingly, we will dismiss the Amended Complaint in its entirety. Specifically, we will (1) dismiss Counts Two through Six with respect to Fisco because she is entitled to absolute immunity under the Westfall Act; (2) dismiss Counts One through Five with respect to the federal defendants for lack of subject matter jurisdiction pursuant to Rule 12(b)(1); and (3) dismiss Count Six with respect to the federal defendants for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

---

**12.** The federal defendants also contend that the federal government is not an employer within the meaning of CEPA. In light of our disposition, we need not address this argument.