**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0389-19

MARY STEINHAUER-KULA,

     Plaintiff-Appellant,

v.

MILLVILLE BOARD OF
EDUCATION,[1]

     Defendant-Respondent.

_____

Submitted October 19, 2020 – Decided  February 23, 2021

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0348-17.

Grace, Marmero & Associates, attorneys for appellant (Douglas M. Long,[2] on the brief).

---

[1]  Improperly pled as Millville Public Schools.

[2]  On May 29, 2020, Douglas M. Long was suspended from the practice of law after he entered a guilty plea in federal court to tax evasion, 26 U.S.C.A. § 7201. <u>In re Long</u>, 242 N.J. 140 (2020).  James K. Grace, of Grace, Marmero & Associates, subsequently entered an appearance as appellant's counsel.

Methfessel & Werbel, attorneys for respondent (Steven K. Parness, of counsel and on the brief).

PER CURIAM

Plaintiff Mary Steinhauer-Kula appeals from the August 16, 2019 order of the Law Division granting summary judgment in favor of defendant Millville Board of Education (BOE) on her whistleblower claims. We affirm.

I.

The following facts are derived from the record. Kula was a longtime employee of the BOE, having held a number of positions. In 2016, she was the District Supervisor of Assessment and Social Studies and District Test Coordinator. She was responsible for overseeing the administration of the PARCC standardized exam[3] to take place on April 20, 2016.

In her role as District Test Coordinator, Kula designed a Power Point presentation for employees who would be administering the PARCC exam. The presentation detailed the materials PARCC permitted students to use during the exam. Kula's presentation stated that PARCC protocols permit students entitled to an accommodation to "receive two calculators – their grade/course specified

---

[3] PARCC is an acronym for the Partnership for Assessment of Readiness for College and Careers, which administers an examination to measure student achievement. N.J.A.C. 6A:8-1.3.

calculator as well as a 'lower level' version" to use during the exam. Kula's presentation was given to Joseph Baruffi, the K through Grade 9 Guidance Supervisor for the district, and Beth Benfer, a teacher. Baruffi and Benfer were the school testing coordinators responsible for administering the PARCC exam at one of the district's middle schools.

After viewing Kula's presentation, Baruffi and Benfer were unsure of the type of calculators special education students who were entitled to an accommodation could use during the PARCC exam. During a conversation on an unrelated subject, Baruffi asked Ramon Jacobs, the District Supervisor of Math and Science, what type of calculators special education students were permitted to use for the exam. As a result of that conversation, Baruffi and Benfer permitted those students to use a TI-15 calculator, along with the standard calculator permitted for use by the other students. The TI-15 calculator was approved by the BOE for special education students at the middle school, but, unbeknownst to Baruffi and Benfer, was not permitted by PARCC protocols.

During a visit to the middle school on the day of the PARCC test, Kula noticed students were using the TI-15 calculator. Kula verbally contacted the State Department of Education (DOE) to report a breach of the PARCC testing

3

protocols. In response, a DOE representative contacted David Gentile, the Superintendent of the school district, who was Kula's supervisor. The DOE representative instructed Gentile to investigate and remedy the breach.

Gentile immediately called a meeting with Kula, Baruffi, Benfer, Dr. Pamela Moore, the Assistant Superintendent of Curriculum and Instruction, and Jacobs.[4] Although he was not directly in the PARCC testing hierarchy, Jacobs was invited to the meeting because Baruffi and Benfer had contacted him prior to the exam and acted on his advice. Jacobs described his belief as to why there was confusion about which calculators were permitted under PARCC protocols:

> in my opinion it was a communication issue where those two individuals, Mr. Baruffi and Ms. Benfer[,] read a directive that said use grade level calculators and the TI-15 was the grade level calculator in our building; it, however, was not the PARCC-approved-grade-level calculator.

Benfer told Moore that she thought there was a lack of clarity in Kula's presentation regarding which calculators were permitted for students entitled to an accommodation.

---

[4] Jacobs had twice previously filed hostile work environment complaints against Kula. In 2012, the BOE issued a written reprimand to Kula pertaining to a hostile encounter she had with Jacobs concerning union matters. Kula's subsequent claim that the reprimand was retaliation for "challenging the process" was determined to be unfounded.

A-0389-19

The Superintendent determined that the error was understandable in light of the perceived lack of clarity in Kula's instructions regarding PARCC-approved calculators for students entitled to an accommodation. He decided the breach would be remedied by having the students re-tested using calculators allowed by the PARCC protocols. Kula completed a corrective action plan explaining how the breach was to be rectified.

Although the Superintendent considered the matter resolved, Kula attempted to conduct an investigation. She demanded an apology and written statements from Baruffi and Benfer indicating they had not followed protocol when they contacted Jacobs instead of her about the calculator ambiguity before administering the test. Kula dictated large portions of the statements, which tended to cast blame on Jacobs, the man whose previous hostile encounter with Kula resulted in her being disciplined. Initially, neither agreed to Kula's demands. When Benfer refused to sign the statement, Kula became "unhinged and cruel," and screamed at Benfer loudly enough to be heard outside of the classroom in which they were situated. A security guard came to the classroom to investigate. Ultimately, Benfer wrote a statement largely dictated by Kula. Benfer felt pressure to comply with Kula's demands because Kula was her supervisor. Kula's interaction with Baruffi caused him to seek medical treatment

A-0389-19

because of a spike in his blood pressure. He stated that the encounter left him depressed and humiliated. Baruffi never again returned to the school.

After receiving complaints about Kula's conduct, an Assistant Superintendent issued a written citation to her personnel file for conduct unbecoming a professional for "the manner in which [she] addressed" Baruffi and Benfer and her failure "to deliver respectful communications to [her] coworkers at all times." Kula's title, rank, salary, and benefits were not affected by the citation. Her grievance of the disciplinary measure was unsuccessful.

A few weeks after the breach of the PARCC protocols, Kula emailed Gentile "to inform [him] of new, unsolicited information . . . of great concern" to her as District Test Coordinator. She reported that

> I was approached by a staff member who reported to me that Mr. Baruffi entered a small group testing site during testing of unit 2 and 3 and told the Test Administrator[,] "We're just going to (hand gesture interpreted as not saying/doing anything)." This would have been April 12th or 13th, which is 7 or 8 days prior to me discovering the calculator issue.

In a responding email, Gentile thanked Kula for bringing the new information to his attention and stated that he would "have it investigated."

Kula responded by stating that she had learned that Gentile had tasked Moore with concluding the investigation into the breach of PARCC protocols.

6

Kula objected to not being permitted to participate in the investigation, as she believed doing so was her responsibility as District Test Coordinator. Gentile responded as follows:

> You have done your job. You reported the mis-use of calculators during the PARCC exam. With regards to any further role you need to play in the investigation of an allegation which is only "hear-say" at this point is limited. You reported what you were told, we will investigate to determine if it can be proven. If you feel you need to update the DOE on second[-]hand information that accuses a long[-]time educator of official misconduct that is up to you. From what you reported in this email, a teacher told you about "hand gestures" [of which] she interpreted the meaning. That is hardly concrete evidence. That is why I will have it investigated to determine if there is any other evidence to substantiate her claim.
>
> As I have stated on multiple occasions, a mistake was made. The students will retake the sections where they were given the wrong calculators.

Kula remained in the position of District Test Coordinator. In 2017, she developed a protocol for PARCC testing to address potential problems with communications, as had occurred with the 2016 PARCC test. Kula later applied for the position of District Supervisor for Math and Science, a lateral move. She made it to the second round of interviews but did not obtain the position. The record does not contain the name or qualifications of the person who was hired.

7

In 2017, Kula left her employment at BOE when she was hired as Superintendent for another school district. During the interview process, Kula received a recommendation from BOE.

In 2017, Kula filed a complaint in the Law Division against BOE, alleging a claim under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. She alleged that the breach of the PARCC testing protocols concerning student use of calculators was a violation of a law, rule or regulation promulgated pursuant to law, or a clear mandate of public policy, and her report of the breach to the DOE constituted whistleblowing under CEPA. Kula alleged BOE retaliated against her for whistleblowing, including by issuing what she alleged was an unwarranted written reprimand, and the failure to appoint her to the lateral position of District Supervisor for Math and Science. Kula later argued that her report to the Superintendent of the hearsay account of Baruffi's hand gesture constituted whistleblowing because she revealed a coverup of a conspiracy to allow special education students to use calculators not approved by PARCC.[5]

Following discovery, BOE moved for summary judgment. After hearing oral argument, the trial court issued an oral opinion granting BOE's motion. The

---

[5] The complaint contains a number of other claims later withdrawn by Kula.

court concluded that, even when the evidence is viewed in a light most favorable to Kula, she could not establish that she engaged in whistleblowing activity. The court found that the PARCC protocols were not a law, rule or regulation promulgated pursuant to law, or a clear mandate of public policy. Thus, a report that the PARCC protocols had been breached does not constitute whistleblowing activity under CEPA.

In addition, the court concluded that, even if Kula's report of the breach of PARCC protocols constituted whistleblowing, pursuant to N.J.S.A. 34:19-4, she could not allege a CEPA cause of action because BOE cured the breach after receiving notice from Kula. That provision is applicable when a whistleblower makes a report of wrongdoing to a public body, such as the DOE. The court found it was undisputed that BOE immediately cured the breach when it had the students re-tested.

Finally, the court concluded that Kula's claim that BOE retaliated against her by preventing her from completing an investigation of the breach was meritless because nothing in the PARCC testing protocols required her to do anything more as District Test Coordinator than complete a form explaining the breach and the steps taken in remediation, which she did. An August 16, 2019 order memorializes the court's decision.

This appeal followed. Kula raises the following arguments for our consideration.

POINT I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR FAILING [SIC] TO DIFFERENTIATE BETWEEN PLAINTIFF'[S] DUTIES AS DISTRICT TEST COORDINATOR IN REPORTING A BREACH AND PLAINTIFF'S SEPARATE ACTIONS OF WHISTLEBLOWING THE "COVER UP" LEADING TO THE BREACH.

POINT II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO ACKNOWLEDGE THE VARIOUS DISPUTES OF MATERIAL FACTS RELEVANT TO PLAINTIFF['S] CEPA CLAIM.

POINT III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO ACKNOWLEDGE PLAINTIFF'S WRITTEN NOTICE OF WHISTLEBLOWING ACTIVITY AS PER THE CONSCIENTIOUS EMPLOYEE PROTECTION ACT AND DEFENDANT'S FAILURE TO INVESTIGATE OR ACKNOWLEDGE SAME.

II.

"We review a grant of summary judgment de novo, applying the same standard as the trial court." Woytas v. Greenwood Tree Experts, Inc., 237 N.J. Super. 501, 511 (App. Div. 2019). Rule 4:46-2(c) provides that a court should

grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'" Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998) (quotations omitted).

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (citations omitted). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523-24 (1995).

In pertinent part, CEPA provides:

[a]n employer shall not take any retaliatory action against an employee because the employee does any of the following:

a.     Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes:

(1)    is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to . . . any governmental entity . . . .; or

. . . .

c.     Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1)    is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to . . . any governmental entity . . . .; or

. . . .

(3)    is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3(c)(1) to (2).]

In addition, where the employee's disclosure is made to a public body, the ability to bring a CEPA claim is conditioned on giving the employer an opportunity to remedy the alleged violation. The Legislature provided that

12

[t]he protection against retaliatory action provided by this act pertaining to disclosure to a public body shall not apply to an employee who makes a disclosure to a public body unless the employee has brought the activity, policy or practice in violation of a law, or a rule or regulation promulgated pursuant to law to the attention of a supervisor of the employee by written notice and has afforded the employer a reasonable opportunity to correct the activity, policy or practice.

[N.J.S.A. 34:19-4.]

"CEPA defines 'retaliatory action' as the 'discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment.'" Beasley v. Passaic Cty., 377 N.J. Super. 585, 606 (App. Div. 2005) (quoting N.J.S.A. 34:19-2(e)). Retaliatory action under CEPA is confined to completed personnel actions that have an effect on either compensation or job rank. Ibid. (citing Borawski v. Henderson, 265 F. Supp. 2d 475, 486 (D.N.J. 2003)); accord Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 359-61 (App. Div. 2002). "Filing a CEPA or other complaint against an employer also 'does not insulate [a] complaining employee from discharge or other disciplinary action for reasons unrelated to the complaint.'" Ibid. (quoting Higgins v. Pascack Valley Hosp., 158 N.J. 404, 424 (1999)).

To establish a CEPA violation, a plaintiff must demonstrate that:

(1)    he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;

(2)    he or she performed a "whistle-blowing" activity described in [N.J.S.A.] 34:19-3(c);

(3)    an adverse employment action was taken against him or her; and

(4)    a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015) (citations omitted).]

A plaintiff who brings a CEPA claim is not required to show that his or her employer's conduct was actually fraudulent or illegal. See Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003). Rather, "the plaintiff simply must show that he or she 'reasonably believes that to be the case.'" Ibid. (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000) (internal quotation omitted)). However, "as a threshold matter" the court "must 'first find and enunciate the specific terms of a statute or regulation, or the clear expression of public policy, which would be violated if the facts as alleged are true.'" Dzwonar, 177 N.J. at 463 (quoting Fineman v. N.J. Dep't of Human Servs., 272 N.J. Super. 606, 620 (App. Div. 1994) (emphasis omitted)). A mere disagreement with an employer's

practice, policy, or activity is insufficient to defeat summary judgment. Young v. Schering Corp., 275 N.J. Super. 221, 236-37 (App. Div. 1995).

If a plaintiff establishes the statutory elements, the burden shifts back to the employer to "advance a legitimate, nondiscriminatory reason for the adverse" employment action. Klein v. Univ. of Med. & Dentistry of N.J., 377 N.J. Super. 28, 38 (App. Div. 2005). "If such reasons are proffered, [the] plaintiff must then raise a genuine issue of material fact that the employer's proffered explanation is pretextual." Id. at 39.

Having carefully reviewed the record in light of these precedents, we affirm the trial court's August 16, 2019 order. We agree with the trial court's conclusion that Kula failed to raise a genuine issue of material fact with respect to whether she engaged in any protected whistleblowing activity. She identified no law, rule or regulation promulgated pursuant to law incorporating the PARCC testing protocols. It appears that the protocols, including those concerning the students' use of calculators, were produced by the organization that created and administered the PARCC exam. They do not have the force of a law, rule or regulation promulgated pursuant to law.[6]

---

[6] We note that a written version of the PARCC protocols does not appear in the record. The protocols are summarized, at least in part, in the Power Point presentation Kula made to Baruffi and Benfer.

15

Nor is there any evidence in the record that the PARCC testing protocols reflect a clear mandate of public policy. The identification of which calculators may be used during a standardized test by students entitled to an accommodation is not a matter of public policy. It is an issue determined by the creators and administrators of the standardized test, presumably to ensure the test accurately assesses the test takers' mathematical abilities.

Nor has Kula identified any law or rule or regulation promulgated pursuant to law requiring a District Test Coordinator to undertake an investigation of any breach of a PARCC testing protocol. The PARCC protocols, which themselves are not laws, rules or regulations promulgated pursuant to law, require only the filing of a report of the breach, which was done here. The record contains no evidence that PARCC required an investigation be conducted when non-approved calculators were used during a test session. Although the testing breach had been promptly remedied, Kula appeared intent on securing statements from Baruffi and Benfer accepting blame for the incident and suggesting Jacobs had somehow acted inappropriately. There is no law, rule or regulation promulgated pursuant to law, or clear mandate of public policy requiring the assignment of fault for a violation of a PARCC testing protocol.

16

Finally, Kula's argument that her report to the Superintendent that someone told her they saw and interpreted a hand gesture by Baruffi constitutes whistleblowing under CEPA lacks sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).  The evidence on which Kula relies for this argument – that she repeated to the Superintendent a hearsay statement by an unnamed person about how an unidentified person interpreted Baruffi's hand gesture to be a sign of his participation in a conspiracy to allow students to use calculators not approved by PARCC – is essentially meaningless.  It does not create a genuine issue of material fact with respect to whether Kula engaged in whistleblowing activity.

In light of our agreement with the trial court that Kula cannot establish that she engaged in whistleblowing activity under CEPA, we need not decide the questions of whether she suffered an adverse employment action within the meaning of the statute or whether her claim is barred by N.J.S.A. 34:19-3.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17